IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:                                    :
                                          :
KURT ALAN TOPFER                          :    CASE NO.  5-18-01966
          Debtor                          :       CHAPTER  7
                                          :    JUDGE ROBERT N OPEL II


## MEMORANDUM OF EVELYNE RUETIMANN TOPFER
## ON ISSUE OF EFFECT OF APPEAL OF STATE COURT ORDER
## <u>WHICH APPROVED MASTER'S REPORT</u>



      The attached  Memorandum is submitted by Evelyne Ruetimann Topfer by her

attorneys Doran, & Doran, PC  and Borland and Borland, LLP.


                    Respectfully submitted,

                    DORAN & DORAN, PC

                    BY: */s/ Lisa M Doran*
                    LISA M. DORAN, ESQUIRE
                    Attorneys Defendant
                    69 Public Square, Ste. 700
                    Wilkes-Barre  PA  18701
Dated: December 17, 2018          570-823-9111    fax 570-829-32-22


1

RE: Topfer
FILE: DV/86470
DATE: 12/17/18
SUBJECT: Superior Court Appeal and Automatic Stay

The issue is whether Mr. Topfer's appeal of the October 25, 2018 order denying his exceptions to the master's recommendations and entering a final decree operates as an automatic supersedeas. Generally, after a notice of appeal is filed, the trial court may not proceed further in the matter. *Pa.R.A.P. 1701 (a)*. However, the trial court may still enforce any order entered in the matter which was not superseded. *Pa.R.A.P. 1701 (b)(2)*. Absent supersedeas, courts possess inherent powers to enforce their orders and decrees by imposing sanctions for failure to comply with their orders. *Morgan v. Morgan, 117 A.3d 757 (Pa. Super. 2015). Rouse Philadelphia, Inc. v. Ad Hoc '78, 274 Pa. Super. 54, 417 A.2d 1248 (1979) cert. denied 449 U.S. 1004, 101 S.Ct. 545, 66 L.Ed.2d 301 (1980)*. This inherent power is retained after an appeal, absent supersedeas. *Tanglwood Lakes Community Ass'n v. Laskowski, 420 Pa. Super. 175, 616 A.2d 37 (1992)*.

Generally, an appeal to an appellate court does not act as an automatic supersedeas. *See Monroe Cnty. Children & Youth Servs. v. Werkheiser, 409 Pa. Super. 508, 598 A.2d 313 (1991)*. An appeal from an order of child support, spousal support, alimony, alimony pendente lite, equitable distribution or counsel fees and costs shall operate as a supersedeas only upon application to and order of the trial court and the filing of security as required in subsection (a). *Pa.R.A.P. 1731 (b)*.

1

Purdon's Pennsylvania Statutes and Consolidated Statutes
   Pennsylvania Rules of Appellate Procedure (Refs & Annos)
      Article II. Appellate Procedure
         Chapter 17. Effect of Appeals; Supersedeas and Stays
         in General

Pa.R.A.P., Rule 1701

Rule 1701. Effect of Appeal Generally

Currentness

**(a) General rule.** Except as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter.

**(b) Authority of a trial court or agency after appeal.** After an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may:

(1) Take such action as may be necessary to preserve the status quo, correct formal errors in papers relating to the matter, cause the record to be transcribed, approved, filed and transmitted, grant leave to appeal in forma pauperis, grant supersedeas, and take other action permitted or required by these rules or otherwise ancillary to the appeal or petition for review proceeding.

(2) Enforce any order entered in the matter, unless the effect of the order has been superseded as prescribed in this chapter.

(3) Grant reconsideration of the order which is the subject of the appeal or petition, if:

(i) an application for reconsideration of the order is filed in the trial court or other government unit within the time provided or prescribed by law; and

(ii) an order expressly granting reconsideration of such prior order is filed in the trial court or other government unit within the time prescribed by these rules for the filing of a notice of appeal or petition for review of a quasijudicial order with respect to such order, or within any shorter time provided or prescribed by law for the granting of reconsideration.

A timely order granting reconsideration under this paragraph shall render inoperative any such notice of appeal or petition for review of a quasijudicial order theretofore or thereafter filed or docketed with respect to the prior order. The petitioning party shall and any party may file a praecipe with the prothonotary of any court in which such an inoperative notice or petition is filed or docketed and the prothonotary shall note on the docket that such notice or petition has been stricken under this rule. Where a timely order of reconsideration is entered under this paragraph, the time for filing a notice of appeal or petition for review

begins to run anew after the entry of the decision on reconsideration, whether or not that decision amounts to a reaffirmation of the prior determination of the trial court or other government unit. No additional fees shall be required for the filing of the new notice of appeal or petition for review.

(4) Authorize the taking of depositions or the preservation of testimony where required in the interest of justice.

(5) Take any action directed or authorized on application by the appellate court.

(6) Proceed further in any matter in which a non-appealable interlocutory order has been entered, notwithstanding the filing of a notice of appeal or a petition for review of the order.

(c) **Limited to matters in dispute.** Where only a particular item, claim or assessment adjudged in the matter is involved in an appeal, or in a petition for review proceeding relating to a quasijudicial order, the appeal or petition for review proceeding shall operate to prevent the trial court or other government unit from proceeding further with only such item, claim or assessment, unless otherwise ordered by the trial court or other government unit or by the appellate court or a judge thereof as necessary to preserve the rights of the appellant.

(d) **Certain petitions for review.** The filing of a petition for review (except a petition relating to a quasijudicial order) shall not affect the power or authority of the government unit to proceed further in the matter but the government unit shall be subject to any orders entered by the appellate court or a judge thereof pursuant to this chapter.

*Note:* The following statutory provisions relate to supersedeas generally:

42 Pa.C.S. § 702(c) (supersedeas) provides that except as otherwise prescribed by general rule, a petition for permission to appeal under that section shall not stay the proceedings before the lower court or other government unit, unless the lower court or other government unit or the appellate court or a judge thereof shall so order. See also Rule 1313 (effect of filing petition).

42 Pa.C.S. § 5105(e) (supersedeas) provides that an appeal shall operate as a supersedeas to the extent and upon the conditions provided or prescribed by law, and that unless a supersedeas is entered no appeal from an order concerning the validity of a will or other instrument or the right to the possession of or to administer any real or personal property shall suspend the powers or prejudice the acts of the appointive judicial officer, personal representative or other person acting thereunder.

Subdivision (a) codifies a well-established principle. *See e.g.*, *Merrick Estate*, 432 Pa. 450, 454, 247 A.2d 786, 787 (1968); *Corace v. Balint*, 418 Pa. 262, 275-76, 210 A.2d 882, 889 (1965). Rule 5102 saves the provisions of Section 426 of the Pennsylvania Workmen's Compensation Act (77 P.S. § 871), which permit a rehearing by the agency under certain circumstances during the pendency of an appeal. Rule 311(h) (further proceedings in lower court) provides that Subdivision (a) is not applicable where an appeal as of right is taken from interlocutory orders relating to attachments, injunctions, etc., thus making clear that the procedure for seeking appellate review

of these collateral matters does not impair the power of the lower court to continue with the case proper.

Subdivision (b)(1) sets forth an obvious power of the lower court or agency under these rules to take actions to preserve the status quo and to clarify or correct an order or verdict. The power to clarify or correct does not extend to substantive modifications. *Pa. Indus. Energy Coalition v. Pennsylvania PUC*, 653 A.2d 1336, 1344-45 (Pa. Cmwlth. 1995), *aff'd*, 543 Pa. 307, 670 A.2d 1152 (1996). Examples of permissible actions to preserve the status quo are those "auxiliary to the appellate process, such as a supersedeas or injunction." *Id.* Examples of permissible corrections are "non-substantial technical amendments to an order, changes in the form of a decree, and modification of a verdict to add prejudgment interest." *Id.* at 1344. "Such actions have no effect on the appeal or petition for review and cannot prompt a new appealable issue." *Id.* at 1345.

Among the permissible "corrections" is the addition or modification of contractual or statutory prejudgment interest, which is an element of contract damages. In such cases, the award of such interest is mandatory and not discretionary. *TruServ Corp. v. Morgan's Tool & Supply Co. Inc.*, Pa., 39 A.3d 253, 264 (2012). Accordingly, even though the amount of a verdict is changed by the addition of prejudgment interest, the verdict has been "corrected" and not "modified."

The Supreme Court has held that, so long as a motion for attorneys' fees has been timely filed, a trial court may act on that motion under subdivision (b)(1) even after an appeal has been taken. *Samuel-Bassett v. Kia Motors Am., Inc.*, 613 Pa. 371, 34 A.3d 1, 48 (2011). Thus, unlike the court actions discussed in *Pa. Indus. Energy Coalition*, an award of attorneys' fees constitutes a separately appealable order that would be reviewable upon filing of a timely separate notice of appeal, measured from the date the fee award order was entered.

Generally an appeal does not operate as a supersedeas of government agency action.

Subdivision (b)(3) is intended to handle the troublesome question of the effect of application for reconsideration on the appeal process. The rule (1) permits the trial court or other government unit to grant reconsideration if action is taken during the applicable appeal period, which is not intended to include the appeal period for cross appeals, or, during any shorter applicable reconsideration period under the practice below, and (2) eliminates the possibility that the power to grant reconsideration could be foreclosed by the taking of a "snap" appeal. The better procedure under this rule will be for a party seeking reconsideration to file an application for reconsideration below and a notice of appeal, etc. If the application lacks merit the trial court or other government unit may deny the application by the entry of an order to that effect or by inaction. The prior appeal paper will remain in effect, and appeal will have been taken without the necessity to watch the calendar for the running of the appeal period. If the trial court or other government unit fails to enter an order "expressly granting reconsideration" (an order that "all proceedings shall stay" will not suffice) within the time prescribed by these rules for seeking review, Subdivision (a) becomes applicable and the power of the trial court or other government unit to act on the application for reconsideration is lost.

Subdivision (b)(3) provides that: "(W)here a timely order of reconsideration is entered under this paragraph, the time for filing a notice of appeal or petition for review begins to run anew after entry of the decision on reconsideration." Pursuant to Pa.R.C.P. 1930.2, effective July 1, 1994, where reconsideration from a domestic relations order has been timely granted, a reconsidered decision or an order directing additional testimony must be entered within 120 days of the entry of

the order granting reconsideration or the motion shall be deemed denied. See Pa.R.C.P. 1930.2(c), (d) and (e). The date from which the appeal period will be measured following a reconsidered decision in a domestic relations matter is governed by Pa.R.C.P. 1930.2(d) and (e).

Under the 1996 amendments to the Rules of Criminal Procedure governing post-sentence practice, see Pa.R.Crim.P. 720 and 721, reconsideration of a decision on a defendant's post-sentence motion or on a Commonwealth motion to modify sentence must take place within the time limits set by those rules, and the judge may not vacate sentence or "grant reconsideration" pursuant to subdivision (b)(3) in order to extend the time limits for disposition of those motions. The amendments to Pa.R.Crim.P. 720 and new Pa.Crim.P. 721 resolve questions raised about the interplay between this subdivision and post-trial criminal practice. See, e.g., Commonwealth v. Corson, 444 A.2d 170 (Pa.Super.1982).

**Credits**

Adopted Nov. 5, 1975, effective July 1, 1976. Amended June 23, 1976, effective July 1, 1976; Nov. 30, 1978, effective 120 days after Dec. 23, 1978 [April 22, 1979]; Dec. 11, 1978, effective Dec. 30, 1978; May 16, 1979, effective 120 days after June 2, 1979; April 26, 1982, effective 120 days after May 15, 1982; amended and effective Sept. 15, 1983; amended June 28, 1985, effective July 20, 1985; Dec. 10, 1986, effective Jan. 31, 1987; Aug. 22, 1997, effective Jan. 1, 1998; Amended April 26, 2001, imd. effective; April 9, 2013, effective 30 days after adoption.

**Editors' Notes**

**EXPLANATORY COMMENT--1979**

The note is expanded to describe the effect of failure of a lower court or other government unit to grant reconsideration within the appeal period.

Notes of Decisions (241)

Rules App. Proc., Rule 1701, 42 Pa.C.S.A., PA ST RAP Rule 1701
Current with amendments received through October 15, 2018.

End of Document                                   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Purdon's Pennsylvania Statutes and Consolidated Statutes
   Pennsylvania Rules of Appellate Procedure (Refs & Annos)
      Article II. Appellate Procedure
         Chapter 17. Effect of Appeals; Supersedeas and Stays
            Stay or Injunction in Civil Matters

Pa.R.A.P., Rule 1731

Rule 1731. Automatic Supersedeas for Orders for the Payment of Money

Currentness

**(a) General rule.** Except as provided by subdivision (b), an appeal from an order involving solely the payment of money shall, unless otherwise ordered pursuant to this chapter, operate as a supersedeas upon the filing with the clerk of the lower court of appropriate security in the amount of 120% of the amount found due by the lower court and remaining unpaid. Where the amount is payable over a period of time, the amount found due for the purposes of this rule shall be the aggregate amount payable within 18 months after entry of the order.

**(b) Domestic relations matters.** An appeal from an order of child support, spousal support, alimony, alimony pendente lite, equitable distribution or counsel fees and costs shall operate as a supersedeas only upon application to and order of the trial court and the filing of security as required by subdivision (a). The amount and terms of security shall be within the discretion of the trial court.

**Credits**

Adopted Nov. 5, 1975, effective July 1, 1976. Amended Dec. 11, 1978, effective Dec. 30, 1978; May 16, 1979, effective 120 days after June 2, 1979; Nov. 24, 1986, effective Dec. 13, 1986; Dec. 30, 1987, effective Jan. 16, 1988.

Notes of Decisions (12)

Rules App. Proc., Rule 1731, 42 Pa.C.S.A., PA ST RAP Rule 1731
Current with amendments received through October 15, 2018.

End of Document                            © 2018 Thomson Reuters. No claim to original U.S. Government Works.

117 A.3d 757
Superior Court of Pennsylvania.

Sheri A. MORGAN, Appellee

v.

Daniel T. MORGAN, Appellant.

Argued Jan. 27, 2015.
|
Filed May 28, 2015.

**Synopsis**
**Background:** After the parties divorced, mother
filed a child support action against father. The
Court of Common Pleas, Franklin County, Civil
Division, No. 2009–557, Van Horn, J., found father
had been lying about his income, set father's child
support obligation, and ordered father to pay
$128,526 of mother's attorney fees. Father appealed
and mother filed a cross-appeal. The Superior
Court, Donohue, J., 99 A.3d 554, affirmed in
part, reversed in part, and remanded. While the
prior appeal was pending, father moved to strike
child support orders due to lack of subject matter
jurisdiction. The Court of Common Pleas denied
father's motion, and he appealed.

[Holding:] The Superior Court, No. 1421 MDA
2014, Stabile, J., held that the Court of Common
Pleas had jurisdiction to modify father's child
support obligation.

Affirmed and remanded.

Mundy, J., joined the opinion.

Fitzgerald, J., concurred in the result.

West Headnotes (5)

[1]    **Child Support**
          ⟜ Contracts Relating to Support
       **Child Support**
          ⟜ Jurisdiction

Pursuant to the law of the case doctrine,
trial court had jurisdiction to modify
father's child support obligation, even
though his child support obligation
was arrived at through an agreement,
rather than support proceedings, and
the agreement was incorporated, rather
than merged, into the divorce decree,
where a prior panel of the Superior
Court specifically concluded the trial
court had subject matter jurisdiction
to modify the child support obligation
regardless of whether the parties'
property settlement agreement was
merged into the divorce decree, because
the parties had no power to bargain
away their child's rights.

Cases that cite this headnote

[2]    **Appeal and Error**
          ⟜ Denial of relief in general

The Superior Court's standard of
review from the denial of a petition to
strike a judgment is limited to whether
the trial court manifestly abused its
discretion or committed an error of law.

Cases that cite this headnote

[3]    **Judgment**
          ⟜ Errors and Irregularities
       **Judgment**
          ⟜ Hearing and determination

A petition to strike a judgment will not
be granted unless a fatal defect in the
judgment appears on the face of the
record; matters outside of the record
will not be considered, and if the record
is self-sustaining, the judgment will not
be stricken.

Cases that cite this headnote

[4]    **Child Support**
          ⟜ Presentation and reservation of
       grounds of review

Father waived for purposes of appeal his argument that the trial court lacked the authority to modify child support because the parties did not request modification, where he did not raise it before the trial court, and either failed to raise it or abandoned the issue in a prior appeal. Rules App.Proc., Rule 302(a), 42 Pa.C.S.A.

Cases that cite this headnote

[5]    **Child Support**
       ⇸ Determination and disposition of cause

       **Child Support**
       ⇸ Costs

       **Costs**
       ⇸ Nature and form of judgment, action, or proceedings for review

Father's obdurate, obstreperous, and vexatious conduct in raising jurisdictional issues simultaneously in different courts, and through repeated motions in the same court while the issue was already pending before another panel of the Superior Court, warranted remand to the trial court for the calculation of reasonable counsel fees to mother to deter father from filing frivolous appeals in the future. Rules App.Proc., Rule 2744, 42 Pa.C.S.A.

2 Cases that cite this headnote

**Attorneys and Law Firms**

*758 Anthony J. Vetrano, King of Prussia, for appellant.

John C. Howett, Jr., Harrisburg, for appellee.

BEFORE:   MUNDY,   STABILE,   and
FITZGERALD,* JJ.

---

*       Former Justice specially assigned to the Superior Court.

**Opinion**

OPINION BY STABILE, J.:

Appellant Daniel T. Morgan[1] ("Father") appeals from the July 21, 2014 order of the Court of Common Pleas of the 39th Judicial District, Franklin County Branch ("trial court"), which denied Father's motion to strike the trial court's child support enforcement orders dated November 5, 2013, December 4, 2013 and June 4, 2014. Father moved to the strike the orders because he believed the trial court lacked subject matter jurisdiction to order child support in connection with C.M., his un-emancipated and severely autistic adult son with Sheri A. Morgan ("Mother"). Because we have resolved the central issue of subject matter jurisdiction in a prior appeal, we affirm the trial court's order and remand this matter to the court for calculation of counsel fees.

---

[1]     On September 24, 2014, we issued a *per curiam* order directing the parties' names be redacted in the caption to reflect only their initials to protect the confidentiality of minors. This appeal, however, does not involve any minors. Accordingly, we vacate the September 24, 2014 order.

[1]    The facts and procedural history of this case are undisputed. As summarized by a prior panel of this Court:

In 2003, the parties were divorced in Maryland. In conjunction with the divorce, the parties entered into a property settlement agreement ("PSA"), which provided, in relevant part, that Father would pay Mother alimony and child support. The PSA provided that Father's alimony obligation would remain fixed until July 1, 2007, after which either party could seek to modify the amount of the obligation. The PSA was incorporated into the divorce decree.

On May 3, 2007, Father registered the Maryland divorce decree and PSA in Franklin County. Almost immediately thereafter he filed a petition seeking to reduce his alimony obligation. In response, Mother filed a petition seeking to increase Father's alimony obligation.

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

These filings initiated approximately four years of proceedings regarding Father's alimony obligation, including an appeal to this Court, our remand to the trial court for further evidentiary proceedings, and then a subsequent appeal.

In 2011, as the second appeal from the alimony proceedings was pending before this Court, Mother filed a support action because Father told her that he was going to cease paying child support for C.M. As part of the ensuing support proceedings, Father's employer submitted income information to the trial court that revealed that Father had been lying about his income and submitting falsified documents, including federal tax r?turns, to the trial court in connection with the alimony action.[2] It was later discovered that the tax returns Father produced in the support action—after *759 his deceit in connection with the alimony proceedings had been discovered—were also falsified. The discovery of Father's fraud on the court led to a protracted discovery period. As a result, the parties did not appear before the trial court for a hearing on Mother's support petition until July 2012, with a second day of hearings held in September 2012. The trial court subsequently entered an order setting Father's child support obligation and providing that it would apply retroactively to May 3, 2007 (the date Father registered the parties' divorce decree and PSA in Franklin County) and requiring Father to pay $128,526 of Mother's counsel fees. In making the support award, the trial court assigned Mother an income of $92,500 and rejected Mother's claim for an upward deviation of 25% beyond the amount prescribed by the Child Support Guidelines because of the minimal custodial time Father has with C.M. On July 11, 2013,[[3] the trial court amended this order to provide, *inter alia*, that Mother's earning capacity should be applied retroactively to May 3, 2007. Father timely appealed and Mother timely filed her cross-appeal.

2   We are deeply troubled by Father's representations about his income. The record before us suggests Father made statements under oath to conceal the extent of his income. Thus, it appears an investigation by proper authorities may be warranted into Father's conduct during the alimony and instant support proceedings. We, however, express no opinion on the merit or potential outcome of any investigation.

3   The order was dated July 11, 2013, but was not filed until July 12, 2013.

*Morgan v. Morgan,* 99 A.3d 554, 556 (Pa.Super.2014) (footnotes omitted), *appeals denied,* 825 MAL 2014, 826 MAL 2014 (Pa. filed April 2, 2015). In his appeal before the prior panel, Father filed a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, arguing that the trial court lacked subject matter jurisdiction to enforce the parties' PSA with respect to the child support obligation.[4] Father also argued that the trial court lacked authority to modify child support, because the parties did not request modification.[5]

4   As the trial court observed in its 1925(a) opinion, "Father's [1925(b) s]tatement consist[ed] of thirty pages of text with no numbered paragraphs identifying specific issues. Rather, sentences throughout the thirty pages [were] in bold print that appear[ed] to be assertions of error but [were] duplicative. Trial Court 1925(a) Opinion, 9/23/13, at 2.

5   Father abandoned this argument in his appellate brief before the prior panel.

On September 5, 2013, while the parties' cross appeals were pending in this Court, Mother filed an "Omnibus Petition to Enforce the July 12, 2013 Order." Father responded to the petition. On November 5, 2013, the trial court issued an order, granting in part Mother's petition. Specifically, the trial court directed the Domestic Relations Division "to attach the wages of [Father] in an additional amount of two-thousand dollars ($2,000.00) per month effective the date of this [o]rder to satisfy the $128,525.81 of combined attorneys' fees award."[6] Trial Court Order, 11/5/13.

6   The record reveals Father did not seek a supersedeas or a stay of the trial court's July 12, 2013 order that was on appeal before the prior panel of this Court and, therefore, the trial court retained authority to enforce

the child support order. *See Cruse v. Cruse,*
*737 A.2d 771, 773 (Pa.Super.1999), appeal*
*denied, 562 Pa. 670, 753 A.2d 818 (2000);*
*see also Travitzky v. Travitzky, 369 Pa.Super.*
*65, 534 A.2d 1081, 1084 n. 3 (1987)* (holding
that, absent a supersedeas, the trial court has
inherent power to enforce its orders even after
an appeal has been taken) (citation omitted).

Because Father was subject to the July 12, 2013
support order, and because Father received a lump
sum bonus of $138,329.04 from his employer, the
trial court issued another order on December 4,
2013 directing the entire net bonus amount, after
the required tax withholding, to be applied to
Father's existing arrears. *See* Trial Court Order,
12/4/13. The trial court further directed that "[u]pon
receipt of the lump sum, the Domestic *760
Relations Division shall place said sum on hold for
a period of thirty days pending further audit of the
case." *Id.*

On December 16, 2013, Father filed a "Motion
to Strike Orders Dated November 5, 2013 and
December 4, 2013" ("First Motion"). In support
of his motion, Father principally argued that the
November 5, 2013 and December 4, 2013 orders
attaching his income sought to enforce the July 12,
2013 child support order that was invalid, because
the trial court lacked subject matter jurisdiction
to modify child support obligations contained in
the PSA. On December 20, 2013, the trial court
dismissed the First Motion.

On March 3, 2014, the trial court issued an
order with respect to the audit performed by the
Domestic Relations Division. On March 18, 2014,
both parties filed petitions to dispute the audit.
Following a hearing, the trial court, on June 4, 2014,
issued an order directing how Father's bonus would
be disbursed.

On July 7, 2014, Father filed a "Motion to Strike
the Orders Dated November 5, 2013, December
4, 2013 and June 4, 2014 Due to Lack of Subject
Matter Jurisdiction" ("Second Motion"), raising
essentially the same argument he raised in the
First Motion. Simply put, Father argued the trial
court lacked subject matter jurisdiction to issue the
underlying July 12, 2013 order and, as a result,
the related child support orders dated November 5,

2013, December 4, 2013 and June 4, 2014 had to be
stricken as void.

On July 22, 2014, the trial court issued an order
denying Father's Second Motion. In so denying, the
trial court noted Father repeatedly asked the court
not to enforce its July 12, 2013 child support order
based on lack of subject matter jurisdiction. The
trial court also noted that "[t]he ultimate issue of
whether the [court] has subject matter jurisdiction
to modify [Father's] child support obligation is
currently on appeal before the Superior Court, and
until the Superior Court has ruled on the matter,
[the trial court] will continue to enforce [its] [o]rders
in this case." Trial Court Order, 7/22/14. Because of
"the obdurate and duplicative nature of [Father's]
multiple [m]otions on the issue" of subject matter
jurisdiction, the trial court directed Father to pay
Mother $500.00 in attorneys' fees. *Id.* Father timely
filed the instant appeal from the denial of the
Second Motion.

Thereafter, on August 21, 2014, the prior panel
of this Court issued its decision, addressing,
*inter alia,* Father's argument on subject matter
jurisdiction. Specifically, the prior panel addressed
Father's argument that the trial court lacked subject
matter jurisdiction to enforce the parties' PSA
with respect to child support obligations, because
the PSA was not merged into the divorce decree.
In so doing, the prior panel concluded the trial
court indeed had jurisdiction to modify Father's
child support obligation despite the fact that the
parties' PSA was not merged into their divorce
decree. *Morgan, 99 A.3d at 557.* The prior panel
reasoned "[t]he Divorce Code specifically provides
that regardless of whether an agreement between
parties is merged or incorporated into the divorce
decree, '[a] provision of an agreement regarding
child support, visitation or custody shall be subject
to modification by the court upon a showing of
changed circumstances.' " *Id.* (citing 23 Pa.C.S.A. §
3105(b)). The prior panel further noted that parties
to a divorce action "have no power ... to bargain
away the rights of their children." *Id.* (citation
omitted). Accordingly, the prior panel of this Court
rejected as meritless Father's jurisdictional *761
challenge.[2]

7   On November 13, 2014, Father filed a Petition for Allowance of Appeal in the Supreme Court presenting three questions for review, namely: whether a trial court (1) can modify a child support order that is nonexistent, (2) may modify a contract if no modification is requested, and (3) may modify a contract without prior notice and opportunity to be heard. As noted above, the Supreme Court denied Father's petition on April 2, 2015.

The prior panel also observed that, as the appeal before it was pending, Father filed an Application for Remand, in which he presented the same argument regarding the trial court's jurisdiction and posited that because the trial court lacked jurisdiction to modify his support obligation, there was no valid order underlying his appeal. *Id.* at n. 5 (record citation omitted). Because it concluded the trial court had jurisdiction over the matter, the panel denied Father's application in its August 21, 2014 decision. *Id.*

On September 8, 2014, Father filed his Rule 1925(b) statement in connection with the instant appeal, arguing that the trial court lacked subject matter jurisdiction to issue the July 12, 2013 order, because the parties did not request modification of child support. Father also argued that because no request for modification existed, his due process rights were violated.

On September 24, 2014, the trial court issued its Rule 1925(a) opinion, addressing the issue of subject matter jurisdiction raised in Father's Rule 1925(b) statement. In its Rule 1925(a) opinion, the trial court observed that the prior panel of this Court had resolved Father's argument that the trial court lacked subject matter jurisdiction. *See* Trial Court Opinion, 9/24/14, at 3. As a result, the trial court concluded that "the measures taken by [the trial court] to enforce the modification of the provision addressing Father's child support obligation also did not lack subject matter jurisdiction and were well within [the trial court's] power and authority." *Id.*

On appeal, Father raises three issues for our review, reproduced here verbatim:

(1) Can a trial court modify a child support order that is nonexistent?

(2) Can a trial court modify an agreement to pay child support if such agreement has been requested by no one?

(3) Does modification of an agreement to pay child support require notice and an opportunity to be heard?

Father's Brief at 6–7.

[2]  [3]  Against this background, we are mindful that:

> [o]ur standard of review from the denial of a petition to strike a judgment is limited to whether the trial court manifestly abused its discretion or committed an error of law. A petition to strike a judgment will not be granted unless a fatal defect in the judgment appears on the fact of the record. Matters outside of the record will not be considered, and if the record is self-sustaining, the judgment will not be stricken.

*Bell v. Kater,* 943 A.2d 293, 295 (Pa.Super.2008) (citation omitted), *appeal denied,* 599 Pa. 679, 960 A.2d 454 (2008).

Father first argues the trial court lacked subject matter jurisdiction to modify child support when the record contained no underlying child support order, but rather a PSA containing child support provisions. *See* Father's Brief at 20. As the trial court observed, and as we have recounted above, the prior panel of this Court resolved this precise issue in Father's previous appeal. Accordingly, the determination of the prior panel on the issue of subject matter jurisdiction controls the outcome here under the law of the case *762 doctrine. *See Ario v. Reliance Ins. Co.,* 602 Pa. 490, 980 A.2d 588,

Case 5:18-bk-01966-RNO    Doc 34    Filed 12/17/18    Entered 12/17/18 16:56:23    Desc
Main Document      Page 15 of 27

597 (2009) (explaining that "a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter"). As we explained earlier, the prior panel of this Court specifically concluded the trial court had subject matter jurisdiction to modify the child support obligation regardless of whether the parties' PSA was merged into the divorce decree, because the parties had no power to bargain away C.M.'s rights.

[4] We now turn to Father's second and third arguments, which we combine for ease of disposition and restate as follows. Father argues the trial court lacked the authority to modify child support because the parties here did not request modification and, as a result, his due process was violated. We, however, need not address this argument, because Father waived it by failing to raise it before the trial court. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Although Father raised the issue for the first time in his Rule 1925(b) statement, we consistently have held that appellants may not raise issues for the first time in a Rule 1925(b) statement. *See Irwin Union Nat. Bank & Trust Co. v. Famous*, 4 A.3d 1099, 1104 (Pa.Super.2010) ("It is well settled that issues not raised below cannot be advanced for the first time in a 1925(b) statement or on appeal."), *appeal denied*, 610 Pa. 610, 20 A.3d 1212 (2011). Moreover, our review of the record indicates that Father sought to advance his second and third issues on this appeal, because he either failed to raise them—or abandoned them—in his previous appeal.[8]

[8] Because Father waived his second and third issues, we need not decide whether Father should have raised them in his previous appeal challenging the July 12, 2013 order from which the enforcement orders at issue in this appeal derive. It is worth reiterating that Father abandoned his second issue in this appeal during his previous appeal.

[5] Having disposed of his issues in this appeal, we cannot ignore Father's repeated abuse of our judicial system. Under the Rules of Appellate

Procedure, we *sua sponte* may impose upon Father counsel fees.[9] *See Feingold v. Hendrzak*, 15 A.3d 937, 943 (Pa.Super.2011) (explaining this Court *sua sponte* may "impose an award of reasonable counsel fees"). In fact, Pa.R.A.P. 2744, relating, *inter alia*, to counsel fees, provides:

[9] At argument, Mother's counsel requested this Court to impose upon Father counsel fees. In this regard, however, Mother's counsel failed to file any application for imposition of counsel fees. This oversight by Mother's counsel is not fatal, because this Court *sua sponte* may impose counsel fees.

In addition to other costs allowable by general rule or Act of Assembly, an appellate court may award as further costs damages as may be just, including

(1) a reasonable counsel fee and

(2) damages for delay at the rate of 6% per annum in addition to legal interest,

if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious. The appellate court may remand the case to the trial court to determine the amount of damages authorized by this rule.

Pa.R.A.P. 2744.

As we detailed above, Father's conduct leading up to this appeal has been nothing short of obdurate, obstreperous and vexatious. Father not only raised the jurisdictional issue simultaneously in different *763 courts, but also repeated it in multiple motions in the same court. For instance, while Father's jurisdictional issue was pending before the prior panel of this Court, Father raised the same issue in his application for remand before the prior panel and at least twice (First Motion and Second Motion) before the trial court. When Father appealed the Second Motion, the prior panel of this Court had not yet rendered its decision addressing the jurisdictional issue. Put differently, when Father filed this appeal, he already had **another appeal**

pending in this Court concerning the same issue, *i.e.*, lack of subject matter jurisdiction.

After the prior panel of this Court issued its decision addressing the jurisdictional issue, Father continued this appeal by filing a Rule 1925(b) statement raising once again before the trial court the resolved jurisdictional issue. Additionally, he filed a Petition for Allowance of Appeal in the Supreme Court to challenge the prior panel's decision, raising the same issues that are currently before us. Given the fact that the prior panel of this Court resolved Father's jurisdictional issue and our Supreme Court denied his ensuing appeal, we conclude the instant appeal is wholly frivolous. Accordingly, we deem it appropriate to award

Mother counsel fees to deter Father from filing frivolous appeals in the future. We thus remand this matter to the trial court for calculation of reasonable counsel fees.

Order affirmed. Case remanded. Jurisdiction relinquished.

Judge MUNDY joins the opinion.

Justice FITZGERALD concurs in the result.

**All Citations**

117 A.3d 757, 2015 PA Super 127

---

**End of Document** © 2018 Thomson Reuters. No claim to original U.S. Government Works.

420 Pa.Super. 175
Superior Court of Pennsylvania.

TANGLWOOD LAKES
COMMUNITY ASSOCIATION
v.
Marion LASKOWSKI and
Maria Laskowski, His Wife
v.
S.U. HOME BUILDERS, INC., Appellant.

Argued Aug. 27, 1992.
|
Filed Nov. 16, 1992.

**Synopsis**

The Court of Common Pleas, Pike County, Civil Division, No. 49 of 1989 and 756 of 1989, Thomson, J., denied posttrial relief and entered order enforcing earlier order directing defendants to pay certain costs and release certain monies or, in lieu thereof, face fines of $100 per day for each day of noncompliance. Appellants appealed from order denying posttrial relief. The Superior Court, No. 612 Philadelphia 1992, Hoffman, J., held that appellant who never sought supersedeas or stay of court's original order could not avoid enforcement of order by reason of its appeal.

Affirmed.

West Headnotes (1)

[1] **Appeal and Error**
⟜ Operation of Appeal or Writ of Error and Necessity for Security or Allowance

Trial court could properly enforce its order against appellant, who did not seek supersedeas or stay of court's original order pending appeal, by imposing sanctions for lack of compliance. Rules App.Proc., Rules 1701 et seq., 1701(b), (b)(2), 42 Pa.C.S.A.

10 Cases that cite this headnote

**Attorneys and Law Firms**

**38 *176 Peter C. Paul, Philadelphia, for S.U. Home Builders, appellant.

Wieslaw T. Niemoczynski, Stroudsburg, for Laskowski, appellees.

Before BECK, JOHNSON and HOFFMAN, JJ.

**Opinion**

HOFFMAN, Judge.

This is an appeal from a January 16, 1992 order denying appellant, S.U. Home Builders, Inc., posttrial relief. Appellant presents one issue on appeal:

> Was the lower court divested
> of jurisdiction over the subject
> matter which is under appeal to
> the Superior Court?

Appellant's brief at 3. For the reasons that follow, we affirm.

This appeal stems from a dispute arising from the construction of a home in Tanglwood Lakes, on property which was subject to the rules of the Tanglwood Lakes Community Association [hereinafter "Tanglwood"], appellee in the instant case. Appellant was hired by Marion and Maria Laskowski, also appellees in the current action, to construct a home. Appellant's attempted construction of the home rendered the lot unsuitable for residential construction for a period of a least four years. Two separate actions were then filed in the Court of Common Pleas of Pike County.

In the first action, the Laskowskis brought suit against appellant seeking a release of the balance of a construction *177 fund which was held in escrow, recovery of other money paid to appellant,

Case 5:18-bk-01966-RNO    Doc 34    Filed 12/17/18    Entered 12/17/18 16:56:23    Desc
Main Document      Page 19 of 27

and funds to cover the cost of restoring the property to its previous condition. In the second action, Tanglwood, brought suit against the Laskowskis. Tanglwood claimed that although construction was begun on the lot, it was not completed within the time allowed for construction within the Tanglwood Lake community. Tanglwood sought either completion of construction or the return of the lot to its previous undisturbed condition.

The cases were joined for trial on March 13, 1991. Thereafter, Tanglwood and the Laskowskis entered into a stipulation wherein the Laskowskis agreed that they would either complete construction or restore the lot to its original condition. The case then proceeded to trial on the issues involving the Laskowskis and appellant.

On June 10, 1991, the court entered an order directing that appellant refund all monies paid by the Laskowskis, and that the money paid into the construction escrow account be returned to the Laskowskis. The trial court further held that appellant would be responsible for payment of the cost of restoring the property to its pre-construction condition. Appellant's post-trial motions were denied and appellant subsequently appealed the verdict to the Superior Court in September, 1991.

On September 17, 1991, Tanglwood filed a motion seeking to hold both appellant and the Laskowskis in contempt for failure to restore the property to its original condition. On October 31, 1991, the court entered an order directing that the lot be restored to its previous condition by the Laskowskis within thirty days, and that appellant comply in all other respects with the court's June 10, 1991 order within thirty days. Appellant filed post-trial motions with respect to the October 31 order. On January 16, 1992, the trial court denied appellant's motion for post-trial relief. The court also directed appellant to pay upon demand the costs incurred for restoration of the lot, to return all funds paid by the Laskowskis, and to release the money in the escrow account, or face fines of one hundred dollars a day for each day of noncompliance. This timely appeal followed.

**\*178** Appellant argues that the trial court in this case did not have the power to enforce its January 16, 1992 order as there is an appeal in progress in this case. To support this contention appellant cites Pa.R.A.P. 1701(a) which states:

**General Rule.** Except as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter.

Appellant also states the well known proposition that once an appeal is taken, "the trial court is divested of jurisdiction over the subject matter until further order of **\*\*39** the appellate court reinstating jurisdiction." *Ingram v. Dovertown Estates, Inc.*, 307 Pa.Super. 22, 26, 452 A.2d 884, 886 (1982) (citing *Bartle v. Bartle*, 304 Pa.Super. 348, 450 A.2d 715 (1982)). While the above-stated characterizations of the law are accurate, they are inapposite to the question at hand.

Pa.R.A.P. 1701(b)(2) states that the trial court has the power to "enforce any order entered in the matter, unless the effect of the order has been superseded as prescribed in this chapter." We have previously noted in discussing the effect of Rule 1701(b) that: "trial court possess inherent power to enforce their orders and decrees by imposing sanctions for failure to comply with their orders. *Rouse Philadelphia Inc. v. Ad Hoc '78*, 274 Pa.Super. 54, 71, 417 A.2d 1248, 1257 (1979), *cert. denied*, 449 U.S. 1004, 101 S.Ct. 545, 66 L.Ed.2d 301 (1980). This power is retained even after an appeal is filed, absent supersedeas." *Travitsky v. Travitsky*, 369 Pa.Super. 65, 71, 534 A.2d 1081, 1084 (1987) (citing Pa.R.A.P. 1701(b)(2)). In the instant case appellant made no effort to comply with Chapter 17 of the Rules of Appellate Procedure. Appellant never sought supersedeas or a stay to the court's original order in any court. Thus the trial court could properly enforce its order against appellant by imposing sanctions for lack of compliance. Accordingly, we affirm the trial court's order.

Affirmed.

409 Pa.Super. 508
Superior Court of Pennsylvania.

MONROE COUNTY CHILDREN
AND YOUTH SERVICES
v.
Phyllis J. WERKHEISER, Appellant.

Argued Aug. 15, 1991.
|
Filed Oct. 28, 1991.

**Synopsis**

After mother's parental rights in children were terminated, affirmed at 396 Pa.Super. 379, 578 A.2d 952, the Court of Common Pleas, Monroe County, Civil Division, No. 276 D.R. of 1987, O'Brien, J., ordered mother to pay arrearages and support for children during pendency of appeal of termination order, and mother appealed. The Superior Court, No. 670 Philadelphia 1991, Beck, J., held that when final, appealable order was entered terminating mother's parental rights, her obligation to pay support was also terminated, though appeal was taken, where no supersedeas was sought or obtained.

Reversed and remanded.

West Headnotes (3)

[1]     **Infants**
        ⟜ Effect of transfer or perfection of appeal in general

        **Infants**
        ⟜ Supersedeas or stay of proceedings

        Trial court's final, appealable order terminating parental rights in children also terminates parent's obligation to pay support for children, despite appeal, where no supersedeas is sought or obtained. Rules App.Proc., Rule 1701 et seq., 42 Pa.C.S.A.; 42 Pa.C.S.A. § 5105(e).

5 Cases that cite this headnote

[2]     **Infants**
        ⟜ Supersedeas or stay of proceedings

        Filing of appeal from order terminating mother's parental rights in children did not operate as automatic supersedeas, but rather, for purposes of determining mother's parental status for support purposes, mother's parental rights were terminated when final, appealable order was entered by lower court. Rules App.Proc., Rule 1701 et seq., 42 Pa.C.S.A.; 42 Pa.C.S.A. § 5105(e).

4 Cases that cite this headnote

[3]     **Infants**
        ⟜ Effect of transfer or perfection of appeal in general

        Mother's obligation to support children ceased on date that lower court entered final decree in termination case, pursuant to appellate order directing mother to praecipe for entry of final decree, because her initial notice of appeal from lower court's dismissal of exceptions to decree nisi was premature. Rules App.Proc., Rule 1701 et seq., 42 Pa.C.S.A.; 42 Pa.C.S.A. § 5105(e).

1 Cases that cite this headnote

**Attorneys and Law Firms**

**313  *509 Mark L. Newman, Asst. Public Defender, Stroudsburg, for appellant.

Before ROWLEY, President Judge, and BECK and HESTER, JJ.

**Opinion**

BECK, Judge:

The issue in the instant case is whether a parent whose parental rights have been involuntarily terminated by the trial court remains under an obligation to pay support for those children after the trial court's final order has been entered and during the pendency of an appeal to this court. Appellant, Phyllis Werkheiser, argues that the trial court's order terminating her parental rights in her children also *510 terminated her obligation to support them. She argues that since no supersedeas was sought or obtained, the mere filing of an appeal to this court did not act to stay the trial court's order terminating her rights. Therefore appellant contends that the trial court erred in ordering her to pay arrearages in support for the children between the time that the final order was entered and the time the appeal was decided by this court. We agree and reverse.

**314 The issue before us arises in the following procedural context. Appellant, Phyllis Werkheiser, is the natural mother of four children. After it came to light that the two eldest daughters were being sexually abused by their father, the children were placed in foster care.[1] In January, 1987, the trial court ordered appellant to pay child support in the amount of $40.00 biweekly for the support of two of the children who were with foster care families.[2] After seven years of foster care, Monroe County Children and Youth Services instituted proceedings to terminate appellant's parental rights. On May 10, 1989, the trial court entered a decree nisi granting CYS' petition to terminate appellant's parental rights. Exceptions to the decree nisi *511 were dismissed on August 11, 1989.[3] Appellant took an appeal to this court which was decided on July 27, 1990 and which affirmed the decision of the trial court to terminate appellant's parental rights.

[1] While criminal charges were pending against the father, he committed suicide. Appellant suffered from schizophrenia for which she was treated as an in-patient at a mental hospital for a period of time. Thereafter, appellant was released and held a variety of short term jobs. She changed residences frequently. In November of 1988, the two older daughters who had been the subject of their father's abuse confronted their mother

with the fact that she had known of the abuse for ten months and had failed to protect her children. When appellant refused to accept any responsibility for the suffering caused, her daughters refused to have any contact with her from that time forward. The other daughter also rejected appellant. Only the youngest child, a boy, continued any visitation with appellant during the years of foster care. This brief recapitulation of the family's dissolution is taken from our opinion in *In re J.W., 396 Pa.Super. 379, 578 A.2d 952 (1990)*, in which this court affirmed the termination of appellant's parental rights.

[2] The support order indicates that the child support was designated for the two youngest children. The record does not reveal further how support was calculated nor does it indicate what if any support had been provided for the two older daughters until they reached majority.

[3] As noted by this court in *In re J.W., supra* note 1, appellant appealed from the denial of exceptions to the decree nisi. Since the denial of exceptions to a decree nisi is an interlocutory order, the appeal was not properly taken. In response to an order by the Superior Court a final order was entered and the Superior Court decided the matter on the merits. The impact of the premature appeal, both on the prior appeal and in this case, will be discussed *infra*. While the fact that appellant initially failed to take a proper appeal affects the date on which the termination became a final appealable order, the procedural misstep does not affect the underlying principles upon which we decide the instant case.

On October 25, 1990, a hearing was held before the support master to determine what if anything remained of appellant's support obligations. The master recommended that the support order be suspended as of July 27, 1990, the date this court affirmed the termination order. However, the master recommended that appellant be responsible for support between May 10, 1989, the date the decree nisi terminating her rights was entered and July 27, 1990, the date this court affirmed. The master's report was adopted by the trial court and the support order entered on October 30, 1990.

Appellant filed exceptions to the master's report, claiming that since her rights as a parent had been involuntarily terminated by the trial court, her obligation to pay support for the children had been extinguished as well. On January 15, 1991, the trial court dismissed appellant's exceptions to the recommendation of the support master and entered an opinion and order making the October 30 order the final order of the court. Appellant filed the instant appeal.

The single important issue raised for our consideration in this appeal is whether a parent whose parental rights have been terminated by a final order of the lower court remains obligated to pay support during the pendency of an appeal to this court. Appellant's argument is simple and compelling. She argues that the support obligation derives from *512 the parental status which is terminated when the trial court enters a final, appealable order. Once parental rights have been terminated by a final order, the mere filing of an appeal, without more, neither restores them nor suspends the operation of the court's order. Therefore, appellant contends, just as her parental rights had been terminated by the **315 trial court's order, so concomitantly had her obligation to support the children. We agree.

**[1]** It is undisputed that the obligation to support the children flows from the existence of the relation of parent and child. Since the parties agree that termination of parental rights absolves the parent of her duty to pay support the precise issue is when, in the context of a case wherein a terminated parent appeals the trial court's order, the termination order can be said to have had this effect. We hold that when a final, appealable order is entered by the trial court terminating appellant's parental rights, her obligation to pay support is also terminated despite the fact that an appeal was taken, where, as here, no supersedeas was sought or obtained.

The parties have directed us to no authority which has previously addressed this precise issue nor has our research revealed any. Therefore, our conclusion is based on general and fundamental principles of appellate jurisprudence developed in case law, appellate procedural rules and statutes.

The trial judge correctly noted that the final order entered in the instant matter did not terminate appellant's rights. [4] Rather, his decision to order support arrearages was based upon the proposition that appellant's "appeal to [this court] effected a supersedeas of the trial court's order terminating her parental rights." Based on this conclusion, the trial court reasoned that "the status of parenthood continues until such time as the appeal is decided." Of course, the next reasonable step was also to find, as the *513 trial court did, that "the obligation of support also continues....". Since the entire construct of the trial court's reasoning is premised on the erroneous conclusion that the filing of the appeal alone operates as a supersedeas here, the conclusions based thereon cannot stand.

[4]    For purposes of clarity especially in this procedurally anomalous case, we will address the actual dates involved after we discuss the general principles which inform our inquiry.

It is a principle of long standing that: "The right of appeal does not automatically carry with it the right of supersedeas." *Wilkinson v. United Parcel Service,* 43 A.2d 414, 416, 158 Pa.Super. 34, 39 (1945). *See also Shinn v. Stemler,* 159 Pa.Super. 129, 47 A.2d 294 (1946). In fact, this ancient proposition was recently reiterated by our court. In *Fiore v. Oakwood Plaza Shopping Center,* 401 Pa.Super. 446, 465, 585 A.2d 1012, 1021 (1991) we stated: "The mere filing of an appeal does not automatically function as a supersedeas....". The Rules of Appellate Procedure detail the processes which parties seeking to effect a supersedeas must undertake in order to obtain one. See Pa.R.A.P. 1701 et seq. Other than in an appeal from an order involving solely the payment of money, as provided in Pa.R.A.P. 1731, an appeal does not automatically operate as a supersedeas unless the party makes proper application either to the lower court or to this court. Even then the application must demonstrate the necessity for the relief requested. See *Wilkinson,* 158 Pa.Super. at 39, 43 A.2d at 416; *Shinn,* 159 Pa.Super. at 130, 47 A.2d at 295 ("a supersedeas operates in favor of those who ask for and have done the things necessary to obtain it"); *see also Fiore,* 401 Pa.Super. at 463–466, 585 A.2d at 1021–1022 (parties must properly apply for and demonstrate the need for supersedeas).

The applicable statutory provision governing whether an appeal operates as a supersedeas is 42 Pa.C.S. § 5105(e) (Purdon 1981) which provides in relevant part: "**Supersedeas.**—An appeal shall operate as a supersedeas to the extent and upon the conditions provided or prescribed by law." The extent and conditions are outlined in the case law and appellate rules noted above. Absent compliance with these *514 conditions, no automatic supersedeas of the trial court's order is accomplished just by filing an appeal.

The trial court properly recognizes that there is no direct authority from which one could conclude that an appeal from an order terminating parental rights operates as an automatic supersedeas. Instead the trial court reaches its conclusion by interpreting the "nature" of the termination proceeding. **316 The trial court reasoned that since a petition for termination of parental rights may only be brought when adoption is contemplated, the involuntary termination proceeding is "merely the initial stage of a two-step proceeding resulting in a decree of adoption".

Next, the trial court cited the general rule regarding the well-established principle that a trial court may not proceed further in a matter from which an appeal has been taken. Pa.R.A.P. 1701(a). From these two general and distinct notions the trial court concluded that the filing of an appeal here prevented it from proceeding with the adoption phase of the process and that therefore the filing of an appeal acted as a supersedeas which prevented the status of parenthood from terminating until the appeal was finally adjudicated. We analyze this matter differently from the trial court.

In the first instance, an appeal generally operates to divest the trial court of jurisdiction and prevents the trial court from taking any further action in the matter during the pendency of the appeal.[5] However, in our view, one cannot extrapolate from this general principle to a conclusion that therefore the trial court's final order is a nullity until the appeal is decided. If such were the case the rules providing for the obtaining of a supersedeas would be unnecessary. In fact, just the opposite is

the case. The taking of the appeal "freezes" the parties' status as provided in the trial court's final order, unless a supersedeas or *515 stay has been obtained. While the trial court cannot act except in enumerated circumstances neither can the parties take any action contrary to the final order from which an appeal has been taken, **unless the effect of the order has been superseded** as prescribed by the rules. See Pa.R.A.P. 1701(b)(2). Moreover, the fact that an involuntary termination proceeding is undertaken in contemplation of adoption does not require a different result. The final order of the trial court terminates the parental rights of the parent unless and until the order is reversed by this court or the effect of the order is superseded by an order for which a party has properly applied. The trial court is correct in noting that adoption is the ultimate, eventual goal when a custodial agency seeks the termination of parental rights. In re B.E., 474 Pa. 139, 144, 377 A.2d 153, 155 (1977). However, it is also true that "when a child is in the custody of an approved adoption agency, it is not necessary that adoption be imminent before the agency may petition to have a parent's rights terminated." In re Burns, 474 Pa. 615, 627, 379 A.2d 535, 541 (1977). Furthermore, no particular adoption plan need be shown before the trial court is permitted to terminate a parent's rights. Id. In fact, the Supreme Court has noted that one of the purposes of the adoption laws is to allow the agency to proceed with termination proceedings independently of an adoption. Id. Thus, while the agency seeking termination of parental rights must retain as its "continuing concern the **eventual** placement of a child for adoption", the lack of actual success or immediacy of adoption will not vitiate the termination proceeding. In re B.E., 474 Pa. at 144 n. 5, 377 A.2d at 155 n. 5 (emphasis added). The fact that the trial court cannot proceed with the adoption process does not, in itself, prevent the termination order from becoming final.

[5] The appellate rules give the trial court the power to proceed in enumerated situations including the authority to take action to preserve the status quo and enforce any order entered in the matter, **unless the order has been superseded as prescribed** by the appellate rules. See Pa.R.A.P. 1701(b)(1) and (2).

[2]   [3]   Based on the foregoing discussion, we conclude that the filing of an appeal from the order terminating parental rights did not operate as an automatic supersedeas and that, for determining her parental status for support purposes, mother's parental rights were terminated when a *516 final, appealable order was entered below. All that remains to be decided is when that event occurred in the context of the instant appeal. The resolution of the question is complicated here by the fact that appellant prematurely filed a notice of appeal from the trial court's dismissal of **317 the exceptions to the decree nisi. As noted above, and as found by this court in our opinion in *In re J.W., 396 Pa.Super. at 385, 578 A.2d at 955*, an appeal will not lie from an order denying exceptions to a decree nisi. Therefore, this court caused a per curiam order to be entered in the appeal from the termination proceeding which directed appellant to praecipe for the entry of a final decree in the termination case. Pursuant to that order, a final decree was entered on April 10, 1990. Thus, on April 10, 1990, when the final order was entered in the termination case, appellant's parental rights were terminated for purposes of deciding her obligation to pay support for the children. We conclude that appellant's status as parent terminated when the final decree was issued on April 10, 1990.

Order reversed and case remanded for recalculation of support arrearages consistent with this opinion. Jurisdiction is relinquished.

**All Citations**

409 Pa.Super. 508, 598 A.2d 313

---

End of Document

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:                          :
                                :
KURT ALAN TOPFER               :       CASE NO. 5-18-01966
         Debtor                 :          CHAPTER 7
                                :       JUDGE ROBERT N OPEL II


                                :


CERTIFICATION OF SERVICE

The undersigned, Lisa M. Doran, Esquire, hereby certifies that a true and correct copy of the *Memorandum Of Evelyne Ruetimann Topfer on Issue Of Effect Of Appeal Of State Court Order Which Approved Master's Report* was served on the following by email this 17th day of December 2018.

Kurt Alan Topfer:     kurt.topfer@gmail.com


  /s/ Lisa M Doran
LISA M. DORAN, ESQUIRE

2