** INBOUND NOTIFICATION : FAX RECEIVED SUCCESSFULLY **

| TIME RECEIVED | REMOTE CSID | DURATION | PAGES | STATUS |
| --- | --- | --- | --- | --- |
| April 26, 2019 at 5:12:26 PM EDT | 9727271244 | 230 | 13 | Received |

04/26/2019  04:01PM  9727271244                    ALLEN VISIONHO                         PAGE  01/13

FILED          Wilkes-Barre, PA.
April 26, 2019
Clerk, U.S. Bankruptcy Court

# **FAX COVER SHEET**

**To:  Judge Robert Opel's Chambers**

**Fax: 570-829-0249**

**From :** Kurt Topfer
39 Loop Road
Mountaintop, PA 18707
**Phone:** 570-574-6435

**RE:** Emergency Motion for transfer of liquid assets/early hardship discharge or dismissal of case

**Number of Pages + Cover —** *13*

**Date: April 25th, 2019**          Resending 4-26-19

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**KURT A TOPFER**

*Movant*

      **v**                           **CASE NO: 5:18-bk-01966 RNO**

**EVELYNE RUETIMANN**

*Respondent*            **PLEADING: EMERGENCY MOTION**

**TRUSTEE ATTORNEY JILL SPOTT**

**RESPONDENT'S ATTORNEY LISA DORAN**

### EMERGENCY MOTION SEEKS:

1) **COURT ORDER TRUSTEE TO TRANSFER OF LIQUID ASSETS**
2) **EARLY HARDSHIP DISCHARGE OR DISMISSAL OF CH 7 CASE**

**FIVE MONTHS UNTREATED CONCOMITANT HEPATOCELLULAR CARCINOMA AND NON-HODGKIN'S LYMPHOMA SEVERELY DAMAGING MOVANT; DEPRIVING LIFE, LIBERTY AND PROPERTY;**

**EIGHTEEN MONTHS DEPRIVED IV KETAMINE INFUSION THERAPY NINE MONTHS DEPRIVED SPEECH PATHOLOGY THERAPY**

### RELIEF REQUESTED PURSUANT TO:

**11 U.S. Code § 1307 - Conversion or dismissal**
**11 U.S. Code § 727 – Discharge**
**11 U.S. Code § 1325 - Confirmation of plan**
**11 U.S.C. §1328 - Discharge**
**11 U.S. Code § 363 - Use, sale, or lease of property**
**11 U.S. Code § 362 – Relief from Stay**

(2) Ex Parte Relief from a stay under **§362(a)** or a request to prohibit or condition the use, sale, or lease of property pursuant to **§363(e)** may be granted without prior notice only if:

(A) it clearly appears from specific facts shown by affidavit or by a verified motion that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party or the attorney for the adverse party can be heard in opposition

**Rule 4001. Relief from Automatic Stay; Prohibiting or Conditioning the Use, Sale of Property; Obtaining Credit; Agreements**

**Amendment XIV**

No State shall…deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

**Due Process Clause**

1

The guarantee of due process for all persons requires the government to respect all rights, guarantees, and protections afforded by the U.S. Constitution and all applicable statutes before the government can deprive any person of life, liberty, or property. Due process essentially guarantees that a party will receive a fundamentally fair, orderly, and just judicial proceeding. Substantive due process are substantive rights so fundamental as to be "implicit in the concept of ordered liberty."

*"Hardship discharge is court's approval of the granting of a discharge ahead of normal timetables due to severe injury, severe illness, terminal conditions such as some cancers,"*

**attorney.com (http://www.attorneys.com/bankruptcy/bankruptcy-hardship-discharge)**

Movant, Kurt Topfer, Pro se, requests the BAP grant an order authorizing, directing the Trustee to release enough liquid assets from the equitable distribution award to pay for essential medical office visits, medication and for the payment of basics – food, gas, heat (past bills), trash removal, basic internet and cell phone service. His cell phone service has been cut and internet service will be discontinued later today or tomorrow, nor will he be able to print.

Relief is vital, and long-overdue. Financial incapacity has prevented Petitioner from seeking treatment for a malignant blood disease consisting of large B-cell and T-cell lymphoma and suspected heptatocellur carcinoma (liver cancer) – both of which are classified as potentially terminal, especially the longer treatment is delayed.

Immediate and irreparable injury, loss, or damage will result to the Movant, with collateral negative effects on estate, before the bankruptcy case is settled in a normal timeframe. Therefore, he seeks an emergency discharge. If that is not possible, a dismissal of his case.

The court may grant a "hardship discharge" of some of the debts if (1) the debtor cannot make all payments due to "circumstances for which [he] should not justly be held accountable," (2) a certain amount of property has already been distributed under the plan, and (3) modification under §1329 "is not practicable." 11 U.S.C. §1328(b). Movant faxed a draft of this "emergency"

2

motion to the Trustee's attorney, attorney Spott at approximately 1:00 pm today, but has not

heard back.

> *It's not hyperbole to suggest that an individual with cancer is extremely more likely to die as a result of the financial pressures put on as a direct result of treatment, **Gershburg Law, Bankruptcy and Cancer, (https://www.danielgershburg.com/2016/11/05/bankruptcy-and-cancer/)***

> *....important is the impact of cancer on the patient's ability to remain employed, since most health insurance is obtained through the workplace. These factors are particularly important in younger working-age populations, in which employment, income, insurance status, and personal assets vary greatly. **Health Affairs Vol. 32, No. 6: Medicaid Expansion & Vulnerable Populations** (https://www.healthaffairs.org/doi/full/10.1377/hlthaff.2012.1263).*

### RELIEF REQUESTED

1. Order immediate payment of Dr. Richard Osuntoksun's bills for office visits. Payment
   was due upon services rendered. Movant post-dated checks for office visits. One is
   $1,039 and the other is $285 (approximately). Doctor is taking the $285 check to the
   bank tomorrow.

2. Previous $1,039 check bounced. Since assets had already been distributed pursuant to
   Lower Court's equitable distribution scheme, Movant did not expect Trustee would not
   transfer enough liquid assets into his PNC personal checking account to cover the check.
   This did not happen. Therefore, Movant incurred a $35 fee as a result of the check
   bounding. Movant's brother, Edward Topfer, incurred a significant credit card charge for
   payment of this bill, as doctor would not see Movant for second visit until bill was paid.
   Brother expects re-payment, as his financial capacity is severely stretched.

3. Federal Law requires Movant schedule regular office visits with Dr. O, due to Federal
   requirements governing the dispensing of a Federally-Controlled Class II prescription the
   Movant has been prescribed since December 2013, as a result of narcolepsy. Federal Law

3

requires "out-of-network" provider, Dr. Richard Osuntoksun, Scranton, Pa, to evaluate

Movant, before dispensing two powerful, high-dose, dangerous medications - Federally-

Controlled, Class II Narcotics.

4.  Movant was forced to switch doctors last month, due being prescribed a combination of

medications causing problems for months on end, combinations which are not

recommended by drugs.com and other authoritative medical sources.

5.  In addition, Movant is over one week late ordering the injection kit, costing $250 out-of-

pocket per month. Ability to function compromised as a result of exhaustion. Movant's

complicated medical condition turned complex.

6.  Without medication, Movant is subject to black-outs and deep sleep, which lasts several

days - the reason he inadvertently missed the November 21st, 2018 BAP hearing, failed to

comply with appeal filing deadline requirements, resulting in over $6000 in sanctions,

due to his missed opportunity to provide testimony and evidence that his submission of

an involuntary petition was not to delay proceedings, in bad faith or to harass the

Respondent.

7.  Moreover, financial incapacity prevented treatment for malignant blood disease now

going on five (5) months.

8.  He sought concurrence for payback plan multiple times; August, October, November and

December 2018. No concurrence from opposing counsel.

9.  Malignant blood disease turned aggressive end of December, concurrent with lack of

heat, lack of medication, lack of access to courts. Neoplasm on top middle of his forehead

has more than quadrupled in size.

4

10. Concomitant hepatocellular carcinoma with non-hodgkin's lymphoma is suspected, but has yet to be confirmed.

11. Collateral effects on other conditions, particularly narcolepsy, are restricting Movant's ability to function.

12. Movant is without income.

13. Rent-to-own vehicle agreement with rental property tenants has been in place since February, thus, no rental income is received.

14. Financial incapacity prevented Movant from heating house the entire winter, a situation causing pipes to burst.

15. Complications with, and uncertaintly from bankruptcy proceedings aggravates maliginant blood disease.

16. Severe pain required morphine injections at Geisinger Clinic Emergency Room in March.

17. Movant filed for Chapter 7 on May 9th, 2018, after incurring significant financial losses, insurmountable debt, unemployment and medical problems, not as a result of irresponsible spending.

18. Pursuant to *11 USC § 1302(b)* (specifying that the trustee is to advise and assist the debtor in performance under bankruptcy plan); *Autos, Inc v Gowin, 244 Fed Appx 885, 889 (10th Cir 2007),* on August 3rd, 2018, the Movant emailed suggested  payback plan to sell the rental property located at 399 Sunset Road; proceeds would have paid-off the creditors.

19. Movant had no choice but to appeal the Divorce Master's Final Report and Recommendations, due to false statements, non-compliant format, outdated retirement account amounts (from June 2017), and an incorrect 2016 Federal Income Tax Return.

5

Master also incorrectly assigned $9,000 against the Petitioner for rental income, among several other errors, including a non-compliant report format, use of blanket statements without reference to law. Additionally, Movant sought relief from an over $8,500 assignment of sanction allegedly due to filing "frivolous" petitions – the petition from which this decision was rendered consisted of 85% materially false statements.

20. On August 3rd, 2018, in reply to Movant's suggestions to sell the rental property, Trustee's secretary replied the Movant could not sell the rental property, as he was in Chapter 7,

21. On October 2nd, 2018, the Petitioner emailed the trustee necessity for financial relief, $250/month injection kit difficult to order on time; impending winter need for heating (oil or coal) to prevent pipes from freezing, stress reduction imperative to overcome pancreatitis. Petitioner requested any updates

22. On October 8th, 2018, the trustee's secretary emailed she did not understand Petitioner's email; that they could not release what they did not have.

23. On November 5, 2018, Movant emailed opposing counsel, Lisa Doran, esq., for concurrence on selling the selling of the cottage rental property, warning of the dissipation of assets, medical problems, need to have financial capacity for monthly injections kits. He also stated willingness to consider suggestions, citing "real and growing danger the longer thus situation remains unresolved," a statement which turned out true. Attorney Doran's one-sentence response was, "We are not able to concur."

24. On November 6th, 2018, attorney Doran emailed Petitioner seeking concurrence for her motion requesting the BAP conduct a status conference. Movant concurred.

6

25. Due to delays in receiving timely injection kits, coupled with complications by being consistently prescribed the wrong combination of medication, (drugs.com provides evidence), the Movant inadvertently missed attending the November 21st, 2018 hearing regarding a motion filed by opposing counsel requesting court sanction him over $6,000 in legal fees and court costs pursuant to 303(i) for filing an Involuntary Petition, exposing himself to liability, without the ability to contest, cross-examine or present evidence.

26. The BAP granted the Order, false statements in the opposing counsel's testimony and the Master's Final Report dissipate the estate's assets, further distancing the Petitioner from achieving the mandate Congress assigned to bankruptcy – to give the impoverished a chance at a fresh start.

27. December 18th, 2018 BAP hearing, Judge Opel stated he was not pleased with the trustee's lack of participation, the creditors left without relief since May 2018. Judge Opel gave leave to both the Petitioner and the opposing counsel that they were free to contact the trustee and convey he was not pleased with the trustee's lack of participation.

28. December 18th, 2018, the Petitioner emailed the trustee, conveyed the judge's message and re-stated the need to sell the rental cottage immediately as the most efficient means to end the case and that it was medically-necessary, due to the lack of financial capacity preventing transportation for lymphoma treatment; timely purchase the $250 monthly injection kit, Exhibit I.

29. January 4th, 2019, attorney Doran emailed Petitioner of her intent to file motion requesting the BAP move forward with the equitable distribution scheme determined by Lower Court, under appeal in Superior Court, requesting Petitioner's concurrence without sending a copy of the motion.

7

30. After receiving the motion - *Joint Motion of Evelyne Ruetimann and Chapter 7 Trustee To Implement Equitable Distribution of Marital Assets* - Petitioner emailed attorney Doran several examples of financial errors in the equitable distribution scheme, including the fact that the scheme included outdated retirement statements and Ms. Schmeling's incorrect 2016 Federal Income Income Tax Return, consisting of errors in violation of IRS Code.

31. Since Petitioner's December 18th, 2018 email to the trustee regarding the immediate need to end the bankruptcy case by selling the rental property, lymphoma, consisting of large B cells and T cells, has clearly and aggressively spread – what was once a skin-surface lesion has grown into a small potato-sized, disfiguring and clearly ugly mass clearly visible on the top middle of his forehead., each week growing incrementally larger, causing stinging. Geisinger Emergency twice gave Petitioner morphine injections for pain.

32. Petitioner has sustained the following serious, painful and permanent injuries, which include but are not limited to the following:

> Facial disfigurement
>
> Chronic itching
>
> Neuropathic pain

33. As a result of the aforementioned injuries, the Petitioner was rendered disabled, needlessly sick. He continues to sustain severe mental and physical pain and great discomfort, all of which require specialized medical and treatment and are alleged to be permanent.

8

34. Research avers that his injuries are of a continuing and permanent, if not fatal, and obviously permanent nature, and he will continue to suffer and require constant care and treatment on an ongoing basis. .

35. Movant believes and has been informed that he will be obliged to spend various sums of money and incur various expenses for treatment of the aforementioned injuries in the future, with said expenses for these injuries and treatment.

36. As a further result of the aforementioned injuries sustained in this case, the Movant has sustained and will continue to sustain loss of everyday pleasures and enjoyment of life for which a claim can be made.

37. As a further result of the aforementioned injuries sustained in this case, the Movant's chances of meaningful employment have been severely diminished. The longer relief is denied, the less likely any form of recovery is possible.

**WHEREFORE,** the Movant, Kurt Topfer, seeks BAP intervention to authorize, direct or order the trustee, Robert Sheils, to provide the Petitioner immediate financial relief by paying Dr. Osuntoksun's bill and allocating money to the Petitioner to enable him to purchase the basics – food, gas, heat (if needed), trash removal, basic internet and cell phone service. Otherwise, the Movant seeks advice how to proceed.

Respectfully Submitted By:                                                    Date: 4-25-2019

Kurt Topfer
39 Loop Road
Mountaintop, PA, 18707
Phone: 570-574-6435

9

## VERIFICATION

I, Kurt Topfer, verify that the statements made in this Motion are true and correct. I understand, that false statements herein are made subject to the penalties of 18 Federal Code 1621, relating to unsworn falsification to authorities.

Date: 4-25-2019

KURT A. TOPFER

10

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:

**KURT ALAN TOPFER**
      **Debtor**
**ROBERT SHEILS, ESQ**
      **Trustee**
        **vs**

**CHAPTER   7**

**CASE NO: 5:18 - bk - 01966 RNO**

**EVELYNE RUETIMANN**
**EVELYNE TOPFER**
      **Respondent**
**LISA DORAN, ESQ**
      **Counsel**

**PLEADING: EMERGENCY MOTION**

### ORDER OF COURT

On this _____ day of _____, 20_____, upon consideration of Movant's request for Intervention it is ordered that:

- Trustee, Rober Sheils, partially release liquid assets to cover medical expenses, and provide Movant means to basic living expenses to pay for minimum cell phone plan, oil heating bill and trash collection, the piling up of which is causing a sanitary crisis.

- Early discharge of the Chapter 7 Bankruptcy case under "early hardship discharge criteria," or, dismissal of case immediately

BY THE COURT:

Date: _____

_____
J.

11

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:

**KURT ALAN TOPFER**
      Debtor
**ROBERT SHEILS, ESQ**
      Trustee
        **vs**

**EVELYNE RUETIMANN**
**EVELYNE TOPFER**
      Respondent
   **LISA DORAN, ESQ**
      Counsel

**CHAPTER    7**

**CASE NO: 5:18 - bk - 01966 RNO**

**PLEADING: EMERGENCY MOTION**

### CERTIFICATE OF SERVICE

I hereby certify that I am this date serving a copy of the foregoing Emergency Motion in

the above captioned case upon the person and in the manner indicated below:

**Service By:**

    Fax to Middle District Bankruptcy Court
    Second email to Attorney Spott
    Email to Attorney Lisa Doran

**Addressed as Follows:**

    Faxed to 570-828-0249 (Bankruptcy Court)
    Email to jspottesq@sheilslaw.com
        ldoran@dorananddoran.com

KURT TOPFER, Movant, Pro Se

By: _____

Kurt Topfer
39 Loop Road
Mountaintop, PA 18707
(570) 574-6435

Date: 4-25-2019

12